**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JENNIFER JENKINS HOBACK,

                Plaintiff,

v.                              CIVIL ACTION NO.   3:19-0460

SHERRIE COX, in her individual capacity and
in her capacity as an employee of the State of West Virginia;
CHERYL WILLIAMS, in her individual capacity and
in her capacity as an employee of the State of West Virginia;
CRAIG RICHARDS, in his individual capacity and
in his capacity as an employee of the State of West Virginia;
TAMARA KUHN, in her individual capacity and
in her capacity as an employee of the State of West Virginia,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Sherrie Cox's Motion to Dismiss Plaintiff's Complaint. ECF No. 26. Defendants Cheryl Williams, Craig Richards, and Tamara Kuhn filed a Motion to Join Defendant Sherrie Cox's Motion to Dismiss. ECF No. 33. Upon consideration, the Court **GRANTS** Defendants Williams, Richards, and Kuhn's motion, and for the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** Defendant Cox's motion.

**I.
FACTUAL ALLEGATIONS**

This action arises from problems related to Plaintiff Jennifer Jenkins Hoback's former employment as a Registered Nurse at Mildred Mitchell-Bateman Hospital ("MMBH"), a state mental health hospital operated by West Virginia's Department of Health and Human Resources (WVDHHR). Plaintiff asserts that she worked with Defendant Cox for two or three

years before it was announced in November 2017 that Defendant Cox would be promoted to the position of nurse manage over the Unit where Plaintiff worked. Plaintiff states it was common knowledge that she and Defendant Cox "did not get along." *Compl.* at ¶21, ECF No. 1. Following the announcement, Plaintiff states she sent an anonymous letter to Defendant Richards, the Chief Executive Officer at MMBH, about concerns she had with Defendant Cox's promotion. Plaintiff also states that several staff members requested and received transfers out of the Unit. The WVDHHR's Office of Equal Employment Opportunity (EEO) investigated the transfers and allegations of bullying and racism made against Defendant Cox, which delayed her promotion until March 2018. Plaintiff asserts that Defendant Cox believed that Plaintiff was the one who "had filed the EEO Complaint against her." *Id.* at ¶17.

In April 2018, Plaintiff states she spoke with Defendant Williams, the Director of Nursing, about Defendant Cox. Plaintiff told Defendant Williams she believed Defendant Cox would retaliate against her. Plaintiff asserts Defendant Cox learned about this conversation and, on June 7, she "conducted a 'coaching session'" with Plaintiff and wrote her up for an event that occurred on April 20, nearly seven weeks earlier. *Id*. at ¶25. Plaintiff not only denies the allegations in the "write-up," but she also contends she was the only one "coached" over the event. *Id*. at ¶26, 27.

Eight days after being "coached," Plaintiff states that, on June 15, she, Defendant Cox, and three other staff members went to a psychiatric patient's room to administer medication to an individual who was combative. Plaintiff asserts the patient attacked her, causing them both to fall. Ultimately, two other staff members were able to gain control, and the patient was

administered the medication. Plaintiff claims the incident lasted a few minutes and the patient was uninjured. According to Plaintiff, after the medication was administered, all the staff left the room at the same time.

Following the incident, Plaintiff alleges Defendant Cox retaliated against her and falsely reported to Defendant Williams that Plaintiff verbally and physically abused the patient. Defendant Williams met with Plaintiff later in the day on June 15 and informed her she was suspended pending an investigation. According to Plaintiff, Defendant Williams also completed a "Patient Complaint Form" that "was referred to administration for investigation." *Id*. at ¶49. Thereafter, investigations also were started by Teri Stone, an employee of Legal Aid of West Virginia, Inc. (LAWV),[1] the organization charged with investigating patient abuse and neglect claims at MMBH, and the Board of Examiners for Registered Professional Nurses (WVBON).

According to Plaintiff, Ms. Stone and Jami Boykin, a Nurse Manager, concluded the allegations were unsubstantiated on or about June 29. However, without further investigation, Ms. Stone purportedly changed her mind and told Ms. Boykin on July 2 that she was revising the report to reflect the charges were substantiated. Plaintiff states Ms. Boykin objected and refused to sign the report. Plaintiff claims that a co-worker told her on July 13 that she had heard the case against Plaintiff was closed and she was supposed to return to work but, when Defendant Cox heard about it, "she found someone in Adult Protective Services ("APS") to reopen the case because she was trying to get [Plaintiff] fired." *Id*. at ¶80.

---

[1]Ms. Stone and LAWV were named as Defendants in this action, but they were dismissed by agreement on November 18, 2019. ECF No. 38.

On July 18, a predetermination conference was held with Defendant Kuhn, the Human Resources Director. At the conference, Plaintiff was permitted to give her side of the story. Thereafter, Defendant Kuhn and Defendant Richards met and decided to terminate Plaintiff. By letter dated that same day, Plaintiff was notified "she was terminated for gross misconduct[.]" *Id*. at ¶87.

Thereafter, Plaintiff filed a grievance with the West Virginia Public Employee Grievance Board (WVPEGB). On March 7, 2019, the WVPEGB found "MMBH had failed to prove by a preponderance of the evidence" the allegations of physical or verbal abuse. *Id*. at ¶92. In the Order, Plaintiff was awarded backpay, with interest, and restoration of her annual leave, sick leave, retirement, and tenure. MMBH also was directed to reinstate Plaintiff and remove all reference of the incident from her personal file. MMBH did not appeal the decision. Additionally, given this decision, the WVBON dismissed the complaint filed with it by Defendant Williams.

Plaintiff states she returned to work on or about April 29, 2019. However, due to stress and the toxicity of the workplace, she resigned approximately one month later. Plaintiff contends that she has yet to receive her backpay with interest as awarded to her by the WVPEGB.

In the present Complaint, Plaintiff alleges three counts against Defendants. In Count One, she asserts a cause of action pursuant to 42 U.S.C. § 1983 against Defendants for unreasonable and unlawful seizure under the Fourth Amendment. In Count Two, she alleges a cause of action against Defendants for malicious prosecution and abuse of process. In Count Three, she asserts a violation of West Virginia's "Whistle-blower Law." Defendant Cox argues all these

claims must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

## II.
## STANDARD OF REVIEW

For a claim to survive a Rule 12(b)(6) challenge, the Court must look for "plausibility" in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

Although Rule 8 does not demand "detailed factual allegations," a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a

context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III.
### DISCUSSION
### A.
### Count One
### Fourth Amendment Claim

In Count One, Plaintiff alleges that the false report and investigation made by Defendants violated her Fourth Amendment right "to be free from unreasonable seizures[.]" *Compl.* at ¶108.[2] Specifically, the Fourteenth Amendment provides that a State may not deprive "any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Plaintiff argues in her Response that Defendants' actions deprived her of the property right she had to continued public employment and to her back pay with interest. However, Defendant Cox asserts Plaintiff's employment is not a property right protected by the Fourth Amendment and her claim for back pay and interest should be made against MMBH, not her.

---

[2]In this paragraph, Plaintiff asserts the Fourth Amendment protects against a seizure of her "person." *Id*. In her Response, Plaintiff states she made a mere drafting error and inadvertently omitted the word "property." As Plaintiff has made a Fourth Amendment claim and the Fourth Amendment clearly protects against unlawful seizures of both a person and property, the Court accepts Plaintiff's representation without requiring her to amend the Complaint and will consider the motion in terms of a seizure of her property.

In considering whether Plaintiff has a property interest protected by the Fourth Amendment that is enforceable through § 1983, the Court must engage in a due process analysis.[3] "Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014).

As to substantive due process, courts first must decide whether a property interest constitutes a fundamental right "rooted in the traditions and conscience of our people." *Reno v. Flores,* 507 U.S. 292, 302-03 (1993) (internal quotation marks and citations omitted) ("Substantive due process analysis must begin with a careful description of the asserted right."). "To have a property interest in a benefit, a person clearly must have more than an abstract desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Substantive due process is a far narrower concept than procedural; it is an absolute check on certain government actions notwithstanding the fairness of the procedures used to implement them." *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) (internal quotation marks and citations omitted). In order "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Logar v. W. Virginia Univ. Bd. of Governors*, No. 1:13-CV-145, 2013 WL 4501052, at *6 (N.D. W. Va.

---

[3]Section 1983 provides a statutory vehicle to address deprivations of constitutional rights by any person acting under color of state law. *Collins v. City of Harker Heights, TX*, 503 U.S. 115, 120 (1992).

Aug. 21, 2013) (quoting *Martin v. Town of Brattleboro*, No. 2:07–cv–260, 2008 WL 4416283, at *1 (D. Vt. September 24, 2008)). It is not enough that a defendant merely acted irrationally. *Id.*

In *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012), the Fourth Circuit Court of Appeals stated that, "[d]efining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process to 'conduct intended to injure in some way unjustifiable by any government interest.'" 682 F.3d at 321 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). If the test is not met, the claim fails, and the court need not examine "the nature of the asserted liberty interest." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999). On the other hand, if shocking conduct is shown, the court must consider the nature of interest asserted and the level of protection that should be afforded. *Id.* (citing *Lewis*, 523 U.S. at 847, n. 8).

In this case, Plaintiff makes no arguments specifically addressing substantive due process, nor does she explain how the conduct she has alleged rises to a constitutional level of a fundamental property interest or how Defendant Cox's conduct was so egregiousness or outrageousness that "it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8. Although the Fourth Circuit has not definitely addressed whether public employment is a fundamental property interest, the Court indicated in a footnote in *Huang v. Board of Governors of University of North Carolina,* 902 F.2d 1134 (4th Cir. 1990), that, "[u]nlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution" and, if an entitlement to

employment exists, it "is essentially a state law contract right, not a fundamental interest embodied in the Constitution." 902 F.2d at 1142 n.10 (citation omitted). Comparably, the court in *Logar* observed that "'most Circuit Courts of Appeal have declined to find that a right to continued public employment is a fundamental property interest entitled to substantive due process protection.'" 2013 WL 4501052, at *6 (quoting *Martin*, 2008 WL 4416283, at *2 (collecting cases)). In light of these cases, and the fact Plaintiff has not specifically argued that her allegations rise to the level of a substantive due process claim, this Court declines to find a fundamental constitutional right exists in this case.

However, even when a fundamental right to public employment does not exist, a property interest in continued public employment still may be created by state laws, entitling an employee to procedural due process protection. *See Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1279 (4th Cir. 1995) ("Determination of whether one has a constitutionally protected property right [in public employment] is a question of state law." (citation omitted)). In *Andrew v. Clark*, 561 F.3d 261 (4th Cir. 2009), the Fourth Circuit explained that "[a] government employee 'has a protected property interest in continued public employment only if he can show a "legitimate claim of entitlement" to his job under state or local law.'" 561 F.3d at 269 (*Luy v. Baltimore Police Dep't*, 326 F.Supp.2d 682, 689 (D. Md. 2004) (quoting *Roth*, 408 U.S. at 577–78)). A plaintiff may make such a showing "when a State has adopted 'rules and understandings, promulgated and fostered by state officials' promoting" "an entitlement to termination 'for cause.'" *Id*. (quoting *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)).

Although not specifically mentioning "procedural due process" in her Complaint or in her Response, Plaintiff's arguments appear to fall squarely within this category of claims. To prevail on a procedural due process claim, a plaintiff must demonstrate: "'(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (quoting *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011)).

Here, Plaintiff insists that the grievance process for state employees entitled her to discharge for cause and created a property interest in her employment.[4] To this point, the Court agrees.[5] The West Virginia Supreme Court has long held that a "'State civil service classified employee has a property interest arising out of the statutory entitlement to continued uninterrupted employment.'" Syl. Pt. 2, *Fraley v. Civil Serv. Comm'n*, 356 S.E.2d 483 (W. Va. 1987) (quoting Syl. Pt. 4, *Waite v. Civil Service Comm'n*, 241 S.E.2d 164 (W. Va. 1977)).[6] Given this property interest, the West Virginia Supreme Court has held that such employees have a procedural due process right to some form of pre-termination hearing. Syl. Pt. 3, *id.* (quoting, in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (holding if a property interest in public employment exists, due process requires that an employee be given notice and an opportunity to be heard prior to discharge). The Court explained that "[t]he essential due process requirements, notice and an

---

[4]The grievance procedures for civil services employees is set forth in West Virginia Code § 6C-2-1 *et seq.*

[5]Although not expressly stated in the Complaint, the Court assumes for purposes of this motion that Plaintiff is a civil service employee as she pursued a grievance through the WVPEGB.

[6]*Waite* has been overruled on other grounds.

opportunity to respond, are met if the tenured civil service employee is given 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' prior to termination." *Id*. at 486 (quoting *Loudermill*, 470 U.S. at 546). Thus, Plaintiff has met the first step of the three-part test.

As to the second step, Plaintiff alleges she was deprived of the property right she had in her employment when she was terminated from her position. Assuming, without deciding, that this temporary deprivation of employment meets step two, Plaintiff claim still fails. Plaintiff makes no argument whatsoever that the administrative procedures employed either before or after her termination were constitutionally deficient at step three. Plaintiff admits in her Complaint that she was given an opportunity to be heard at a predetermination conference. Additionally, following her termination, Plaintiff *successfully* pursued her right to file a grievance with the WVPEGB. The WVPEGB not only granted Plaintiff's grievance, but it also awarded her reinstatement, backpay with interest, and restoration of her benefits. Without any allegations that this process was constitutionally flawed, Plaintiff has failed to state a plausible claim that her procedural due process rights were violated.

To the extent Plaintiff further claims she has a property interest in her backpay, neither Defendant Cox, nor any of the other Defendants named herein, are responsible to make that payment as was ordered by the WVPEGB against MMBH. Although it is somewhat unclear in the Complaint whether Plaintiff is attempting to collect the award she received through the grievance process through this action, if she is, she cannot collect that judgment against the

Defendants she has named in this action. Therefore, the Court finds this action cannot serve as the vehicle to enforce the decision of the WVPEGB.[7]

Accordingly, as Plaintiff did not have a substantive due process right to her public employment, and she has not stated a plausible procedural due process claim, the Court **DISMISSES** Count One as to all Defendants.

**B.**
**Count Two**
**Malicious Prosecution/Abuse of Process**
**and**
**Count Three**
**Violation of West Virginia's "Whistle-blower Law"**

In Count Two, Plaintiff alleges a claim for malicious prosecution and abuse of process and, in Count Three, she alleges a violation of West Virginia's "Whistle-blower Law," West Virginia Code § 6C-1-1 *et seq*.[8] Defendant Cox argues that Plaintiff's whistleblowing claim is barred by the 180-day statute of limitations found in West Virginia Code § 6C-1-4(a).[9] In her Response, Plaintiff concedes that she filed outside the statute of limitations. Therefore, the Court **GRANTS** Defendant Cox's motion to dismiss Count Three. Defendant Cox further argues that

---

[7]Defendant Cox also argues this Court is not the proper venue for enforcement pursuant to West Virginia Code § 6C-2-5, which provides that the decision issued by "the administrative law judge is final upon the parties and is enforceable in the circuit court of Kanawha County." W. Va. Code § 6C-2-5(a). As Plaintiff has not named MMBH as a defendant here, the Court finds it unnecessary to address Defendant Cox's venue argument.

[8]West Virginia Code § 6C-1-1 provides that "[t]his article shall be known, and may be cited, as the 'Whistle-blower Law.'" W. Va. Code § 6C-1-1.

[9]This section provides that "[a] person who alleges that he is a victim of a violation of this article may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within one hundred eighty days after the occurrence of the alleged violation." W. Va. Code § 6C-1-4(a).

Plaintiff's Malicious Prosecution and Abuse of Process claim is really a whistleblower claim and, therefore, it also is barred by the 180-day statute of limitations. Plaintiff disagrees.

In Count Two, Plaintiff alleges, *inter alia*, that Defendants maliciously and intentionally filed a false complaint of abuse and neglect against her and then maliciously and intentionally failed to thoroughly investigate the complaint. These accusations also set in motion investigations by LAWV and the WVBON. As a result, Plaintiff states she has "suffered emotional distress, embarrassment, humiliation and damage to her character and reputation and has incurred attorney's fees and expenses[.]" *Compl.* at ¶120. In her statement of facts, which she incorporated by reference in Count Two, Plaintiff alleges that Defendant Cox made the false report in retaliation for Plaintiff's prior complaints about her. *Id*. at ¶47. From this vantage, Defendant Cox argues Plaintiff simply has alleged a whistleblower claim and it should be dismissed for being filed outside the statute of limitations.

In support of her argument, Defendant Cox cites *Broschart v. West Virginia Department of Health and Human Resources*, No. 11–1569, 2013 WL 2301777 (W. Va. May 24, 2013), an unpublished memorandum decision by the West Virginia Supreme Court. In *Broshart*, a child services worker was terminated from her position and filed a complaint "for the tort of outrage, constructive discharge, violations of the employee handbook or manual, and a whistleblower claim." 2013 WL 2301777, at *1. The plaintiff based each of her claims on the fact she previously had reported "wrongdoing within the organization." *Id*. The defendant moved to dismiss all these claims because they were premised on the plaintiff "being punished for whistleblowing activities" and the plaintiff had filed outside the 180-day statute of limitations. *Id*.

The circuit court granted the motion, and the plaintiff appealed. Without any explanation, the West Virginia Court affirmed the lower court's decision and held the plaintiff had "not shown that the factual findings here were anything other than a whistleblower action, therefore the 180–day statute of limitations applies." *Id*. at *2.

Upon review, the Court finds *Broschart* does not control the present case. In addition to being an unpublished memorandum decision with no analysis, *Broschart* did not address the claims at issue here, that is, Plaintiff's malicious prosecution and abuse of power claims. In comparison, the Court recognizes that West Virginia's Whistle-blower Law and malicious prosecution serve different purposes and require different elements of proof. West Virginia's Whistle-blower Law protects a public employee from adverse employment decisions such as discharge and retaliation when an "employee, acting on his own volition . . . makes a good faith report . . . , verbally or in writing, to the employer or appropriate authority an instance of wrongdoing[.]" W. Va. Code § 6C-1-3(a), in part.[10] A "wrongdoing" is defined as "a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect

---

[10]In full, this section provides:

> (a) No employer may discharge, threaten or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location or privileges of employment because the employee, acting on his own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

W. Va. Code Ann. § 6C-1-3(a).

the interest of the public or the employer." W. Va. Code § 6C-1-2(h). In *Taylor v. West Virginia Department of Health & Human Resources*, 788 S.E.2d 295, 307 (W. Va. 2016), the West Virginia Supreme Court explained that employment claims, such as those under the Whistle-blower Law, West Virginia's Human Rights Act, and retaliatory discharge claims under *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), "all employ effectively the same burden-shifting mechanism," that is:

> If the complainant is successful in creating [a] rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

788 S.E.2d at 307 (quoting Syl. Pt. 3, *Shepherdstown VFD v. W. Va. Human Rights Comm'n*, 309 S.E.2d 342 (W. Va. 1983)); also citing W. Va. Code § 6C–1–4(b) and (c) (1988) ("requiring employee to show by a preponderance that he or she qualifies as a statutory 'whistle-blower,' upon which the burden shifts to the defendant to prove that the complained of action 'occurred for separate and legitimate reasons, which are not merely pretexts'"); *Birthisel v. Tri–Cities Health Servs. Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992) ("'[I]n a retaliatory discharge case, the employer may defend the discharge by showing a legitimate, nonpretextual, and nonretaliatory reason for its action.'").

To the contrary, a claim of malicious prosecution does not require a plaintiff to demonstrate she qualifies as a "whistleblower." Taking the Complaint in a light most favorable to Plaintiff, the Court finds that at least some of Plaintiff's allegations do not rise to a level of "wrongdoing" as defined and protected by the Whistle-blower Law. For instance, Plaintiff alleges

it was well known that she and Defendant Cox "did not get along" and Defendant Cox referred to her as "'that stupid nurse,' 'stupid hillbilly,' and 'dumb ass hillbilly.'" *Compl.* at ¶¶21, 22. As Defendant Cox was to be promoted as the nurse manager over the Unit in which Plaintiff worked, Plaintiff expressed her concerns about the promotion. *Compl.* at ¶¶14, 20-24. Expressing these types of general concerns are not the type of "wrongdoing" and protected activity contemplated by the Whistle-blower Law. However, it could be evidence of malice in support of a claim malicious prosecution or abuse of process claim. Nevertheless, Defendant Cox argues Plaintiff still fails because she has not alleged procurement, which is a necessary element of malicious prosecution.

In *Norfolk Southern Railway Co. v. Higginbotham*, 721 S.E.2d 541 (W. Va. 2011), the West Virginia Supreme Court explained there are two lines of cases establishing the elements of a claim for malicious prosecution. 721 S.E.2d at 545. One line of cases provide: "'To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *id.* (internal quotation marks and citations omitted). The other line of cases state:

> In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 2, *id.* (internal quotation marks and citations omitted). Although stated slightly differently, the West Virginia Supreme Court explained that "[t]he rules delineating the elements of a malicious prosecution claim in . . . [both lines of cases], are the same, and procurement is an

-16-

inherent element in both." Syl. Pt. 3, *id*. In this context, the Court further observed that procurement "requires more than just the submission of a case to a prosecutor; it requires that a defendant assert control over the pursuit of the prosecution." *Id.* at 547; *see* Black's Law Dictionary 1401 (11th ed. 2019) (defining procurement as "[t]he act of getting or obtaining something or of bringing something about.").

In this case, Plaintiff insists she has sufficiently alleged procurement to defeat a Rule 12(b)(6) motion. Specifically, Plaintiff asserts in her Complaint that Defendant Cox did not merely make a false report that resulted in investigations by the LAWV and the WVBON, but she took an active role in the investigation. In paragraph 80, Plaintiff alleges that one of her co-workers told her that, when Defendant Cox heard the case was closed and Plaintiff was supposed to return to work, Defendant Cox contacted "someone in Adult Protective Service ("APS") to reopen the case because she was trying to get . . . [Plaintiff] fired." *Compl.* at ¶80. Given this allegation, the Court finds that Plaintiff has stated a plausible claim of malicious prosecution against Defendant Cox and resolution of whether Defendant Cox's actions are sufficient to establish procurement is a matter for discovery. Therefore, the Court **DENIES** Defendant Cox's motion with respect to Count Two.[11]

---

[11]In Count Two, Plaintiff also makes a claim for Abuse of Process, which is different than a claim for Malicious Prosecution. *See Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985) (stating "'[t]he distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person'" (quoting *Glidewell v. Murray-Lacy and Co.*, 98 S.E. 665, 667 (Va. 1919)). As the parties have not raised any specific arguments about whether this claim should be dismissed, the Court does not address it, and the claim remains.

## C.
## Qualified Immunity

Defendant Cox also argues she is entitled to qualified immunity. In her briefs, she focuses her argument on her Fourth Amendment claim in Count One. However, as the Court has found that claim cannot survive for other reasons, her claim for qualified immunity as to Count One is moot. Additionally, to the extent Defendant Cox is asserting qualified immunity as to the malicious prosecution and abuse of process claims in Count Two, the Court finds her argument fails.

Recently, in *Hupp v. Cook*, 931 F.3d 307 (4th Cir. 2019), the Fourth Circuit considered qualified immunity under West Virginia law in the context of summary judgment on a common law claim for malicious prosecution. 931 F.3d at 325-26. The Fourth Circuit recognized that West Virginia law "affords immunity 'from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known.'" *Id.* at 326 (quoting *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 762 (W. Va. 2014) (citation omitted)). Although West Virginia borrows heavily from qualified immunity jurisprudence for claims brought under § 1983, it also provides there is no immunity if a "defendant's alleged conduct . . . [is] 'fraudulent, malicious, or otherwise oppressive' to the plaintiff." *Id.* (quoting *A.B.*, 766 S.E.2d at 762; other citation omitted)). Indeed, the West Virginia Supreme Court reiterated last year that it "has continually and consistently held that one way to defeat qualified immunity is by alleging that the acts or omissions of a public official or employee were fraudulent, malicious, or oppressive[, and] . . . our case law has continuously recognized that a state actor's malicious conduct will overcome qualified immunity protections." *W. Virginia Div. of Nat. Res. v. Dawson*, 832 S.E.2d 102, 116-17 (W. Va. 2019) (citing Syl. Pt. 1, in part, *State v.*

*Chase Sec., Inc.*, 424 S.E.2d 591 (W. Va. 1992) (stating "[t]here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive" (other citations omitted)). Moreover, the West Virginia Supreme Court said that a "determination of whether a state actor's conduct was malicious is a question for the fact-finder" *Id*. at 117 (internal quotation marks, brackets, and citations omitted). Thus, the Court found summary judgment was inappropriate where a court "would be required to weigh the evidence and make credibility determinations to decide whether the conduct was malicious or oppressive[.]" *Id*.

Similarly, the Fourth Circuit held in *Hupp* that, when historical factual disputes exist underlying a claim for malicious prosecution, "[t]hose disputes must be submitted to a jury. The district court may then 'reserve for itself the legal question of whether [the defendant] is entitled to qualified immunity on the facts found by the jury." *Id*. at 326 (quoting *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005)). In the context of the federal claim for malicious prosecution, the Fourth Circuit explained that a defendant police officer is not absolved from liability merely because a magistrate found probable cause to arrest a plaintiff when that probable-cause determination is predicated solely on the officer's false or misleading statements. *Id*. at 324 (citations omitted). As questions of fact existed in *Hupp* about whether the officer's statements were false, the Fourth Circuit found summary judgment was inappropriate because those issues should be resolved by a jury before the district court "can determine that a reasonable officer in [the defendant's] position would have believed that probable cause existed for [the plaintiff's] arrest and prosecution." *Id*. at 325-26.

In this case, Plaintiff has alleged Defendant Cox's maliciously and intentionally filed a false report accusing her of abusing a patient in retaliation for her complaints and Defendants maliciously and intentionally failed to thoroughly investigate the complaint made against her. At this point, the Court must accept Plaintiff's allegation as true. Therefore, as qualified immunity does not insulate a state actor's malicious conduct and Plaintiff has stated a plausible claim, the Court **DENIES** Defendant Cox's motion for qualified immunity with respect to Count Three. *See, e.g., Wilson v. Frame*, No. 2:19-CV-00103, 2020 WL 1482145, at *10 (S.D. W. Va. Mar. 23, 2020) (denying the defendants' claim of qualified immunity on a motion to dismiss after recognizing a defendant seeking qualified immunity on a motion to dismiss "faces a formidable hurdle" under the low plausibility pleading standard).

### D.
### Punitive Damages and
### Official Capacity Claims

Lastly, Defendant Cox argues Plaintiff is not entitled to punitive damages against her in her official capacity pursuant to West Virginia Code §§ 55-17-4(3) and -2(2). Subsection 4(3) provides: "Notwithstanding any other provisions of law to the contrary: . . . (3) No government agency may be ordered to pay punitive damages in any action," W. Va. Code § 55-17-4(3), and subsection 2(2) defines a "Government agency" to include any "public official named as a defendant or respondent in his or her official capacity[.]" W. Va. Code § 55-17-2(2), in part. In this light, the Court agrees that the punitive damage claim against Defendant Cox cannot proceed against her in her official capacity. Although not argued by Defendant Cox, the Court recognizes punitive damages may be recovered against her in her personal capacity. *See Langley v. Arresting Officer*, No. CV 3:17-3520, 2018 WL 4560208, at *4 (S.D. W. Va. Sept. 21, 2018) (stating "punitive damages are not prohibited when defendants are sued in their individual capacities").

Thus, as Defendant Cox also is sued in her individual capacity, that portion of her punitive damage claim remains.

Additionally, Defendant Cox argues that she is absolutely immune from suit in her official capacity in all respects under the Eleventh Amendment. The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In *Wei-ping Zeng v. Marshall Univ.*, 370 F. Supp. 3d 682 (S.D. W. Va. 2019), this Court explained that "[s]overeign immunity under the Eleventh Amendment protects the State, as well as its agencies, divisions, departments, and officials. Thus, an officer of a State acting in his or her official capacity is entitled to sovereign immunity from claims for money damages." 370 F. Supp. 3d at 690 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70, 78 (1989)). As Plaintiff in this case seeks monetary damages, her claims against Defendant Cox and the other Defendants in their official capacities are barred in their entirety by the Eleventh Amendment.[12]

**IV.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendants Williams, Richards, and Kuhn's Motion to Join Defendant Cox's Motion (ECF No. 33), **GRANTS** Defendant Cox's Motion to Dismiss Counts One and Three as to all Defendants, **DENIES** the

---

[12]The Eleventh Amendment does not bar an official capacity claim under the *Ex parte Young* exception when a plaintiff seeks "'prospective, injunctive relief . . . to prevent ongoing violations of federal law.'" *Id*. (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). However, Plaintiff has not made such a claim for relief in this case.

motion with respect to Count Two, but **GRANTS** the motion to dismiss Defendant Cox and the other Defendants in their official capacities. ECF No. 26.

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      May 11, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE