IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JENNIFER JENKINS HOBACK,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:19-0460

SHERRIE COX, in her individual capacity;
CHERYL WILLIAMS, in her individual capacity;
CRAIG RICHARDS, in his individual capacity;
TAMARA KUHN, in her individual capacity,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Sherrie Cox's Motion for Summary Judgment (ECF No. 97), and Defendants Cheryl Williams, Craig Richards, and Tamara Kuhn's Motion for Summary Judgment (ECF No. 95). Upon consideration, the Court **GRANTS, in part,** and **DENIES, in part,** the first motion (ECF No. 97), and **GRANTS, in full,** the second (ECF No. 95).

I. FACTUAL ALLEGATIONS

This action arises from problems related to Plaintiff Jennifer Jenkins Hoback's former employment as a registered nurse at Mildred Mitchell-Bateman Hospital ("MMBH"), a state mental health hospital operated by West Virginia's Department of Health and Human Resources (WVDHHR). Plaintiff worked with Defendant between for two to three years before MMBH announced in November of 2017 that Defendant Cox would be promoted to the position of nurse manager over the unit where Plaintiff worked.

Following the announcement, Plaintiff sent an anonymous letter to Defendant Richards, the Chief Executive Officer at MMBH, about concerns she had with Defendant Cox's promotion. Plaintiff also states that several staff members requested and received transfers out of the unit. The WVDHHR's Office of Equal Employment Opportunity (EEO) investigated the transfers and allegations of bullying and racism made against Defendant Cox, which delayed her promotion until March 2018. Defendant Cox was aware that Plaintiff had submitted a complaint against her.

In April 2018, Plaintiff states that she spoke with Defendant Williams, the Director of Nursing, about Defendant Cox. Plaintiff told Defendant Williams she believed Defendant Cox would retaliate against her. Plaintiff asserts that Defendant Cox learned about this conversation and, on June 7, wrote her up for an event that occurred nearly seven weeks earlier. Plaintiff not only denies the allegations in the "write-up," but she also contends she was the only one who was reprimanded over the event.

On June 15, 2018, Plaintiff states that she, Defendant Cox, and three other staff members went to a psychiatric patient's room to administer medication to an individual who was combative. According to several witnesses, the patient attacked Plaintiff physically and verbally. Ultimately, two other staff members were able to gain control, and the patient was administered the medication. The incident only lasted a few minutes. After the medication was administered, all staff left the room at the same time.

Following the incident, Defendant Cox reported to Defendant Williams that Plaintiff retaliated against the patient with verbal and physical abuse. Defendant Williams obtained statements from Cox, and three other witnesses, including JoAnne Beals, Scott Jacobs, and Kiki Bullock. She then completed and submitted a report to the West Virginia Adult Protective Services ("APS"). Williams notified Richards and Human Resources Director Tamara Kuhn of her APS

report. On June 18, 2018, Williams informed Plaintiff that she was suspended pending further investigation.

Soon after, the patient called Teri Stone, who provides patient advocacy services as an employee of Legal Aid of West Virginia, Inc. ("LAWV").[1] Stone began investigating with MMBH Registered Nurse Jami Boykin. On July 3, 2018, Stone submitted her report ("Legal Aid Report") to MMBH administrators. The Legal Aid Report summarized interviews with the patient, Defendant Cox, JoAnne Beals, Scott Jacobs, and Plaintiff.

According to the Report, the only available video recording relevant to the incident depicted the area outside the patient's room. This required Stone to rely on witness interviews and statements. The summaries of these witness accounts reflect broad agreement that the patient was aggressive toward Plaintiff. However, the witnesses had differing accounts of Plaintiff's response. Cox stated that Plaintiff put her hand over the patient's mouth and pushed her back, "'almost like a face-grab squeeze.'" *Legal Aid Report 2*, ECF No. 97-18. Similarly, Nurse Beals described witnessing Plaintiff put her hand over the patient's face. *Id*. at 3. When asked if Beals "would consider what she saw from Jennifer Hoback to be physical abuse of a patient," she responded, "'I found it to be a little overboard, yes.'" *Id*. Cox and Beals both recalled Plaintiff returning to the room to antagonize the patient after being directed to leave several times. Beals could not remember any specific statements from Plaintiff that day, but Cox stated that Plaintiff called the patient several derogatory names, including "piece of shit [and] bitch." *Id*. at 2. Scott stated that the entire incident was a "blur" and vaguely stated that "tempers flared." *Id*. at 5. He would not

---

[1] Ms. Stone and LAWV were named as Defendants in this action, but they were dismissed by agreement on November 18, 2019. ECF No. 38.

say whose "tempers flared" or how, and instead conveyed his dissatisfaction with what he perceived as lack of support for staff who "'defend [them]selves when attacked.'" *Id*.

The Legal Aid Report also notes that Plaintiff denied any wrongdoing. When asked if she remembered placing her hand over the patient's face, Plaintiff reportedly stated that "she was very clumsy and was probably trying to brace herself somehow." *Id*. at 4. She also denied making any abusive statements to the patient. Taking this information into account, the Legal Aid Report concluded that the patient's claims of verbal and physical abuse had been substantiated.

On July 18, 2018, Kuhn held a predetermination conference with Plaintiff. After hearing Plaintiff's statement at the conference, Kuhn and Richards decided to terminate Plaintiff based on the Legal Aid Report. Plaintiff was later notified that she was terminated for gross misconduct. In addition, MMBH reported Plaintiff to the West Virginia Board of Nursing ("WVBON"), which initiated its own investigation into Plaintiff's alleged abuse to determine whether to revoke Plaintiff's license.

Thereafter, Plaintiff filed a grievance with the West Virginia Public Employee Grievance Board ("WVPEGB"). On March 7, 2019, the administrative law judge found that "MMBH had failed to prove by a preponderance of the evidence" that Plaintiff committed gross misconduct. *WVPEGB Decision* 1-2, ECF No. 97-21. Weighing the evidence presented during the hearing, the ALJ found that MMBH failed to meet its burden because the only witnesses who claimed to witness Plaintiff grabbing the patient's face were not credible: Cox had motive to retaliate against Plaintiff, and Beals was not in the bathroom when the grabbing allegedly occurred. The ALJ also found that "[i]t appears more likely than not that NM Cox made the physical and verbal abuse complaints against [Hoback] in retaliation for the complaints she believed [Hoback] had made against her." *Id*. at 36, ECF No. 97-21. The ALJ also noted inconsistencies in Cox and Beals'

testimony. According to the ALJ, video evidence that showed Plaintiff going into and out of the room only once within the timeframe at issue, undermining Cox and Beals' testimony that Plaintiff left the room but later returned to antagonize the patient.

In addition to discounting Cox and Beals' testimony, the ALJ stated that the Legal Aid Report carried "little weight" because Stone did not testify at the hearing. The only testimony presented to the ALJ about the Report came from Boykin, who voiced her disagreement with its conclusion. Boykin stated that she and Stone initially concluded that the claims were unsubstantiated, and that Stone later changed her mind without reason. Boykin refused to sign the Report based on that change. The ALJ noted that the Report was "highly suspicious" because it "does not mention that the initial conclusion was different or that the investigators disagreed as to the conclusion." *WVPEGB Decision* 36, ECF No. 97-21.

The ALJ awarded Plaintiff backpay, with interest, and restoration of her annual leave, sick leave, retirement, and tenure. The ALJ also directed MMBH to reinstate Plaintiff and remove all reference of the incident from her personal file. MMBH did not appeal the decision. As a result of this decision, the WVBON also closed its investigation.

Plaintiff states she returned to work on or about April 29, 2019. However, due to stress and the toxicity of the workplace, she resigned approximately one month later. Plaintiff contends that she has yet to receive her backpay with interest as awarded by the WVPEGB.

In the present Complaint, Plaintiff alleges three counts against Defendants. In Count One, she asserts a cause of action pursuant to 42 U.S.C. § 1983 against Defendants for unreasonable and unlawful seizure under the Fourth Amendment. In Count Two, she alleges a cause of action against Defendants for malicious prosecution and abuse of process. In Count Three, she asserts a violation of West Virginia's "Whistle-blower Law." On May 11, 2020, the Court dismissed Counts

One and Three, leaving only the Plaintiff's claim for malicious prosecution/abuse of process. Defendants now seek summary judgment those claims.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Statutory Immunity

*Defendant Cox*

Defendant Cox argues that she is entitled to statutory immunity under West Virginia Code § 9-6-12, which states that

> [a]ny person who in good faith makes or causes to be made any report permitted

> or required by this article shall be immune from any civil or criminal liability which might otherwise arise solely out of making such report.

As a mandatory reporter under West Virginia law, Defendant Cox reasons she made the report in good faith because she had reasonable cause to believe that Plaintiff verbally and physically abused a patient. *See* W. Va. Code § 9-6-9 (requiring employees of nursing homes and medical professionals to report abuse of vulnerable adults if he or she has "reasonable cause" to believe that abuse occurred). After pointing to evidence to substantiate her report, she reasons that she could have faced criminal penalties if she failed to report the incident. *See* W. Va. Code § 9-6-14.

Plaintiff argues that she is not entitled to immunity because her complaint was not made in good faith. Citing evidence that Defendant Cox begrudged Plaintiff for lodging an internal complaint against her for bullying, Plaintiff argues that a reasonable jury could conclude that Defendant Cox made a baseless report to retaliate against her. The Court agrees. Given Plaintiff's denial and corroborating statements from Bullock (which were not summarized in the Legal Aid Report), there is a dispute of fact as to whether Cox's accusation was factually true. There is also a dispute of fact as to whether Cox intentionally fabricated the report because she could have been motived to retaliate against Plaintiff after Plaintiff reported Cox to Richards and delayed her promotion. This motive is further supported by Plaintiff's testimony that Cox knew about her complaint, and retaliated against her by disciplining her, and only her, for an incident that happened nearly two months prior and involved several others. Much like the ALJ, a reasonable jury could conclude that Cox's report was done maliciously and not in good faith. Accordingly, the Court finds that summary judgment is not appropriate on this ground.

*Defendants Kuhn, Richards, and Williams*

The administrator-Defendants also argue that they are statutorily immune from suit because they were legally obligated to investigate Cox's complaint and to report the incident to WVBON. To the extent that the Defendants seek immunity for their investigation, the Court rejects this argument. As noted above, § 9-6-12 only extends immunity for those who "make[] or cause[] to be made any report permitted or required by this article . . . . " By its plain language, internal investigations and employment decisions are not immune under this statute. Likewise, the statute only applies to reports "permitted or required by this article." W. Va. Code § 9-6-12. Defendants have not identified any section within Article 6 authorizing reports to licensing agencies. Rather, they rely on internal policies and unspecified regulations. Thus, they have not met their burden as to this defense.

### B. Qualified Immunity

Next, Defendant Cox reasserts her argument that she is entitled to qualified immunity as a state official. Addressing this argument at the motion to dismiss stage, the Court first noted that West Virginia law "affords immunity 'from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known.'" *Hupp v. Cook*, 931 F.3d 307, 326 (4th Cir. 2019) (quoting *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 762 (W. Va. 2014) (citation omitted)). Applying this rule, the Court held that dismissal was inappropriate because Plaintiff sufficiently alleged that Defendant Cox acted maliciously and intentionally in filing a false report against her.

In the immediate motion, Defendant Cox argues that summary judgment is appropriate for the same reasons statutory immunity is appropriate. Given that the Court has already rejected those reasons, it also denies Cox's bid for qualified immunity.

### C. Count Two: Malicious Prosecution

Having concluded that no defendant is entitled to immunity, the Court next considers whether Plaintiff has raised a dispute of fact sufficient to avoid summary judgment on the merits of her claims. In Count Two, Plaintiff alleges that Defendants maliciously and intentionally filed a false complaint of abuse against her and then maliciously and intentionally failed to thoroughly investigate the complaint. As a result, Plaintiff states she has "suffered emotional distress, embarrassment, humiliation and damage to her character and reputation and has incurred attorney's fees and expenses[.]" *Compl.* at ¶120.

In *Norfolk Southern Railway Co. v. Higginbotham*, 721 S.E.2d 541 (W. Va. 2011), the West Virginia Supreme Court of Appeals explained the two lines of cases establishing the elements of a claim for malicious prosecution. 721 S.E.2d at 545. One line of cases provides: "To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *id.* (internal quotation marks and citations omitted). The other line of cases states:

> In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 2, *id.* (internal quotation marks and citations omitted). Although stated slightly differently, the Court explained that "[t]he rules delineating the elements of a malicious prosecution claim in . . . [both lines of cases], are the same, and procurement is an inherent element in both." Syl. Pt. 3, *id*.

Noting that the "level of control necessary to prove procurement [had] not [been] explicitly delineated" at the time, the Court in *Higginbotham* turned to *Vinal* and *Truman* to illustrate the burden of proof. 721 S.E.2d at 547. In *Vinal v. Core*, 18 W.Va. 1, 25 (1881), the Court found that the defendant procured the prosecution of the plaintiff where both the prosecutors and defendants knew that the plaintiff had not committed the charged crime but arrested him anyway. *Id*. In contrast, in *Truman v. Fidelity & Casualty of New York*, 123 S.E.2d 59 (W. Va. 1961), the Court found that the defendant had not procured the prosecution of the plaintiff where "there [was] nothing to indicate that any steps toward prosecution whatsoever were actually taken by the defendant's agents or employees after the evidence in their hands was left with the prosecuting attorney." *Higginbotham*, 721 S.E.2d at 547 (quoting *Truman*, 123 S.E.2d at 72) (internal quotation marks omitted). Recognizing this context, the Court observed that procurement "requires more than just the submission of a case to a prosecutor; it requires that a defendant assert control over the pursuit of the prosecution." *Id.* at 547.

That said, the Court agrees with Judge Copenhaver's analysis in *Weigle v. Pifer*, which explains that "[t]he citations in *Higginbotham* make it clear that West Virginia embraces the 'false information' exception . . . . " 139 F. Supp. 3d 760, 782 (S.D. W. Va. 2015) (Copenhaver, J.) (quoting *Higginbotham*, 721 S.E.2d 541). Specifically, the *Higginbotham* Court cited to a Texas Supreme Court case and quoted the following: "[a]n exception [...] occurs when a person provides information which he knows is false to another to cause a criminal prosecution." 721 S.E.2d 541 (internal quotation marks omitted) (alterations in original) (quoting *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288 (Tex. 1994)). Therefore, a defendant may be held liable for causing a prosecution to occur by reporting false information, despite having no control over the decision to prosecute.

*Defendant Cox*

At the motion to dismiss stage, the Court rejected Defendant Cox's argument that Plaintiff failed to sufficiently allege the procurement element. The Court relied on allegations that Defendant Cox did not merely make a false report that resulted in investigations by the Legal Aid and Board of Nursing, but she took an active role in influencing the investigation. The Court now finds that Plaintiff has presented enough evidence to survive summary judgment. Although there is little evidence that Cox exerted control over the investigation, there is enough evidence that she intentionally filed a false report. As stated above, there is a dispute of fact as to whether Plaintiff abused the patient on June 15, 2018; whether Cox intentionally fabricated her report of abuse to retaliate against Plaintiff; and whether Cox's report caused several administrative agencies to investigate, or "prosecute," Plaintiff. Consequently, the Court **DENIES** Cox's motion as to this claim.

*Defendants Kuhn, Richards, and Williams*

Plaintiff also brings a malicious prosecution claim against Defendants Kuhn, Richards, and Williams, arguing that they caused or procured a prosecution by WVBON, "by failing to thoroughly investigate [the Legal Aid Report] and by reporting Cox's false allegations to the WVBON." *Combined Resp*. 14, ECF No. 99. Defendants argue that this claim fails to meet any of the elements for malicious prosecution. Defs.' Reply 10, ECF No. 96.

The Court finds that there is no evidence that the Defendants acted with malice and grants their motion on that basis. Unlike Defendant Cox, there is no evidence that Williams, Richards, or Kuhn had any improper motive to harm Plaintiff. Rather, each of the parties—including Plaintiff—believed that the administrator-Defendants' actions were standard procedure mandated by law.

Plaintiff's evidence and arguments otherwise are unpersuasive. First, she argues that "Defendant Williams failed to act in good faith when she told WVBON that Defendant Cox was the best witness." *Combined Resp*. 11. There is no evidence that Williams made this assertion in bad faith. However, even assuming that this is true, no reasonable jury could conclude that Williams was acting maliciously based on this statement alone. In fact, this statement shows that Williams sincerely believed Cox's version of events, and that she had a duty to report Plaintiff to the licensing board to protect vulnerable patients. Plaintiff cannot point to any evidence that Williams gave this statement to harm her. Therefore, the Court rejects this claim.

Second, Plaintiff argues that "Defendant Kuhn failed to act in good faith when she held a predetermination conference with a predetermined outcome and recommended termination of Plaintiff based on Defendant Stone's report despite knowing at the time that Nurse Boykin disagreed with the finding of her co-investigator and that Defendant Cox and Defendant Stone might be friends." *Id*. In support of this claim, Plaintiff submits an email exchange between Kuhn and another MMBH employee, Ginny Fitzwater. When asked why Boykin refused to sign the Report, Kuhn responded, "[Boykin] said she felt like Sherrie Cox and the Legal Aid investigator Terri Stone are friends" and that "it would affect an RN's license." ECF No. 99-13. Kuhn then wrote "Terri Stone has always been a straight shooter and professional in my view." *Id*. In response, Fitzwater wrote: "It's [Boykin's] job to protect the patients, so I don't think her attitude about the investigation was very good in that regard. I question her being on the interview team." *Id*. The Court again finds that this evidence does not show that Kuhn acted with malice toward Plaintiff. Indeed, it shows that Kuhn had a rational reason to discount Boykin's concerns in favor of Stone's conclusion. Consequently, even if the Court were to assume that Cox and Stone

maliciously conspired to harm Plaintiff by filing a false report, it cannot conclude that Kuhn's decision to trust the Legal Aid Report was anything more than negligent.

Third, Plaintiff argues that "Defendant Richards acted in bad faith by relying on obviously flawed information rather than conduct[ing] any investigation of his own." *Combined Resp*. 11. However, Plaintiff has identified no evidence that Richards knew that the information in the Legal Aid Report was "obviously flawed." Indeed, there is simply no evidence demonstrating what Richards knew about the investigation at the time that he approved Plaintiff's termination. There is also no evidence that Richards partook in the WVBON report. The only exhibit Plaintiff cites in support of her argument against Richards is the above email chain. However, Richards' name does not appear anywhere in that exhibit.

Lastly, Plaintiff's deposition testimony further undermines her claim. When asked, "is it fair to say that, from what you know, that [Williams, Kuhn, and Richards] were carrying out whatever their duty and responsibility was with the process that takes place?" Plaintiff answered, "Yes." *Hoback Dep*. 190:24-191:4.

In sum, the Court finds that the evidence, when viewed in a light most favorable to Plaintiff, indicates that Defendants were—at worst—negligent when they relied on the Legal Aid Report in terminating Plaintiff and reporting her to WVBON. Accordingly, the Court **GRANTS** Defendants' motion as to this claim.

### D. Count II: Abuse of Process

In Count Two, Plaintiff also makes a claim for abuse of process. As this Court has previously noted, under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Williamson v. Harden*, 585 S.E.2d 369, 372 (W. Va. 2003) (quoting

*Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985)). This claim is distinct from a claim for malicious prosecution. As explained in *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985), "'[t]he distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person.'" (internal quotation marks omitted). Because the "distinctive nature of an action for abuse of process . . . is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue," *Harden*, 585 S.E.2d at 372 (emphasis added) (quoting *Preiser*, 352 S.E.2d at 28)), "the mere filing of a complaint does not give rise to a claim for abuse of process." *Deel v. W. Virginia EMS Techinical Support Network, Inc.*, No. CIV.A.2:06-1064, 2009 WL 2366524, at *3 (S.D. W. Va. July 24, 2009) (Copenhaver, J.) (internal quotation marks and citations omitted) (quoting *S. States Coop. Inc. v. I.S.P. Co.*, 198 F.Supp.2d 807, 816 (N.D. W.Va.2002)). This is so regardless of the "bad intentions" of the defendant. *Id.* (quoting *Presier*, 352 S.E.2d at 28 n. 8).

*Defendant Cox*

Cox argues that this claim fails as a matter of law because the reports and investigation at issue do not constitute a judicial or legal process. The Court rejects this argument because, to this Court's knowledge, there is no controlling West Virginia precedent limiting an abuse of process claim in such a way.[2] Nevertheless, the Court finds that summary judgment is appropriate because

---

[2] Cox relies on Kansas Supreme Court decision *Bloom v. Arnold*, 248 P.3d 752, 756-57 (Kan. 2011) ("[b]ased on the long-standing definition of the term 'legal process' . . . . we conclude . . . the term 'process' in an abuse of process claim limits the claim of abuse to those proceedings that invoke the aid of judicial process" and "[i]n other words, an abuse of process claim based on improper use of an administrative or other nonjudicial proceeding is insufficient as a matter of law to support such a claim")). However, unlike the Texas Supreme Court case referenced above, the

Plaintiff has failed to show that Cox did anything other than submit the report and participate in the investigation as a witness.

Plaintiff argues that her claim should be submitted to the jury because Cox was directly involved in Stone's "change of opinion." *Combined Resp.* 7, ECF No. 99.[3] She relies on two pieces of evidence, but neither is sufficient to support her claim. First, Plaintiff proffers a July 13, 2018, text message from Ashlan Cole, a former MMBH employee. The text message reads:

> I just heard from one of Sherry's [sic] friends here the first case that was open and closed was done by Jami and you was [sic] suppose[d] to go to unit 5 and work. But when [S]herry found out she stopped it and she found one of her aps [Adult Protective Services] ppl [people] that she knew to open it back up and they did because she said you can get her fired for slander so she [is] going to do what ever to get you fired before you get her fired.

*Ex. 11 to Combined Resp.*, ECF No. 99-11. Second, Plaintiff submits a message dated June 24, 2018, from Darlene Barry, another MMBH employee. Barry's message states: "Tim the super said you were coming back but to a different unit…. I didn't realize Sherri was the one that threw you under .. [sic] but so is the way of the world." ECF No. 99-13 (ellipses in original). Both of the exhibits are cropped in such a way that the Court cannot discern the context under which the messages were written. Plaintiff represents that these messages show that Cox "had gotten Defendant Stone to change her report." *Combined Resp.* 7, ECF No. 99.

The Court finds that these messages are insufficient to avoid summary judgment because both are inadmissible hearsay. Although the Federal Rules of Evidence do not necessarily apply

---

Court is not aware of any West Virginia case law which adopts this rule. Therefore, as a federal Court unauthorized to create state law, the Court declines to follow *Bloom*.

[3] Plaintiff makes this argument in the context of her malicious prosecution claim. However, as outlined above, that tort only arises through the *initiation* of a prosecution. *See Presier*, 352 S.E.2d at 28 n. 8. In contrast, abuse of process concerns the misuse or the misapplication of the prosecution after it has been initiated. *Id*. Therefore, Cox's influence over the course of the Legal Aid investigation is only relevant to the abuse of process claim.

to a motion for summary judgment, Plaintiff cannot rely exclusively on hearsay without also showing that this evidence will be admissible at trial in another form. *See* Fed. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . (B) showing . . . that an adverse party cannot produce admissible evidence to support the fact . . . ."); *see also Farrar & Farrar Farms v. Miller-St.Nazianz, Inc.*, 477 F. App'x 981, 986 (4th Cir. 2012) (internal quotation marks and citations omitted) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Both of the above messages are double hearsay. The messages themselves are out of court statements presented for the truth of the matter asserted, and their content conveys another out of court statement from an unidentified source. *See* Fed. R. Evid. 801. Although it is possible that Cole and Barry will testify at trial about their observations (Plaintiff has listed both as witnesses in the Proposed Integrated Pretrial Order (ECF No. 122)) this would only remedy the first layer of hearsay. The Court cannot conclude that Plaintiff can overcome the second layer of hearsay because Cole and Barry's messages indicate that they do not have firsthand knowledge of Cox's actions.

Moreover, it is clear that Plaintiff will not be to identify any admissible evidence upon review of her deposition testimony. When asked why she believed that Cox was the "mastermind" behind the investigation, Plaintiff could not provide anything other than speculation about Cox's motive. For example, defense counsel asked Plaintiff why she told the Board of Nursing that she believed that Stone changed her conclusion based on her friendship and "lesbian relationship" with Cox, and Plaintiff retorted "that's just hearsay, gossip." *Hoback Dep.* 191:14, ECF No. 97-1. She also admitted that she was "grasping at straws" in an attempt to avoid discipline from the Board. *Id*. at 192. When pressed to provide names, Plaintiff could not:

> Q. Well, who was that that said that?
>
> A. It was just a rumor, you know, how people talk. Several people.
>
> Q. Can you identify anybody who told you 'Oh, they have a lesbian relationship'?
>
> A. I can't think offhand.

*Id*. at 192:8-13. Based on Plaintiff's failure to identify admissible evidence in her briefings and her deposition, the Court is doubtful that she can submit admissible evidence to support her abuse of process claim against Cox.

In addition, even if the Court assumes that these messages are admissible, they are not enough for a reasonable jury to find that Cox had direct involvement in the investigation. Both are too ambiguous. It is difficult to conclude that Cox misused the investigative process based Cole's claim that Cox made Stone "open it back up." At best, this indicates that Stone decided to reopen the investigation, but it does not indicate that this reopening was a misapplication of process. Moreover, Cole's message does not clearly refer to the Legal Aid investigation upon which Plaintiff's claim relies. Cole vaguely refers to Cox's "aps ppl," but Stone was employed by Legal Aid—a wholly separate entity conducting an independent investigation. Similarly, Barry's statement that she "didn't realize [Cox] was the one that threw [Plaintiff] under" is not enough to establish that Cox controlled the investigation process or outcome in any way.

In contrast, Stone has clearly refuted Plaintiff's claim:

> Q. Did you feel that [Cox] did anything to influence the investigation and your conclusion?
>
> A. No.

*Stone Depo*. 76:21-23, ECF No. 97-17. Stone denied having changed her mind and explained that she told Boykin that she was only unsure about the conclusion of the Report because of the lack of video evidence. After speaking with her supervisor, she concluded that the claims were

"substantiated" based on the witness testimony. She omitted Boykin's objection from the Legal Aid Report because Boykin, a MMBH representative, was not a Legal Aid advocate.

Given this testimony, the Court concludes that Plaintiff has failed to raise a dispute of material fact that Cox did anything more than make a report and participate in the investigation as a witness. Because this is insufficient to establish an abuse of process claim under West Virginia law, the Court **GRANTS** Cox's motion as to this claim.

*Defendants Kuhn, Richards, and Williams*

Defendants argue that the claim fails because there is no evidence that they misapplied a legal process for a wrongful purpose. The Court agrees. As noted above, Defendants reasonably relied on the Legal Aid Report and believed that they were legally obligated to investigate and report Plaintiff to WVBON. Therefore, the Court **GRANTS** Defendants' motion as to this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Kuhn, Richards, and Williams' Motion for Summary Judgment and **DISMISSES** them from the suit. The Court **GRANTS, in part, and DENIES, in part,** Defendant Cox's Motion for Summary Judgment. The only claim remaining is the malicious prosecution claim against Defendant Cox.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 18, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE